STATE OF IOWA, Appellee, v. IRL O'DELL, Appellant.

No. 47411.

(Reported in 39 N. W. 2d 100)

SEPTEMBER 20, 1949.

Victor E. Walker, of Davenport, J. H. Maloney, of Rock Island, Illinois, and Ray H. Johnson, Jr., of Des Moines, for appellant.

Robert L. Larson, Attorney General, Don Hise, First Assistant Attorney General, and F. H. Becker, County Attorney, for appellee.

1158

HALE, J.—There is no allegation of error other than the extent of the sentence. The sole question presented by this appeal is whether the trial court abused the discretion vested in that court by section 789.15 of the 1946 Code of Iowa, by sentencing the defendant to an indeterminate term in the penitentiary, rather than a term in the county jail or payment of a fine. Defendant does not question the sufficiency of the evidence to sustain the conviction, but challenges the severity of the punishment imposed by the sentence.

The assault of which defendant was convicted occurred in what was known as the Eagles Hall in Dubuque, which was used as a meeting place by the members of Local Union No. 241, United Farm Equipment and Metal Workers of America, C. I. O. A number of this local union were considering a transfer of membership, and the executive branch of the local union had circulated leaflets calling a membership meeting on April 7, 1948, at two o'clock in the afternoon, to pass on the question of whether or not the local union should disaffiliate with the parent organization and join the United Auto Workers, C. I. O.

John T. Watkins and Miss Katherine Hall, international officers, arrived in Dubuque, but failed to find the local records. The legality of the proceedings under the union rules is challenged, but so far as the present question is concerned is not of consequence. It involved a question of union jurisdiction.

Local members began to arrive about noon for the planned meeting, and also members of the same organization from other localities including the tri-cities where defendant resided, apparently to assist the international officers. Resistance to those from outside the city was met at the door, the local sergeant at arms undertaking to check the credentials of the local members. Others were asked to leave, but the outsiders pushed into the hall while the credentials of the local members were being checked by the sergeant at arms of the Dubuque local. All persons other than local members were asked to leave, and all did so except Miss Hall, a Mr. Foster, and the defendant, O'Dell. John Watkins at the doorway demanded admission, which was refused him. Watkins then commenced to read a suspension notice to the sergeant at arms. While so reading Watkins said "all right

boys" and he, with men behind him, started to push into the hall. Local members began to gather in the hall. Among these from a distance was the defendant.

Clair Woodman, a member of the local union, was standing in the hall some distance from the door with some people behind him. Defendant approached him from the rear bearing a chair and violently struck Woodman on the head, inflicting severe injuries. Woodman fell to the floor. He received scalp lacerations about two and one-half inches in length, and the doctor in attendance testified that this type of head wound could always cause danger of concussion; that he had X-rayed the wound because of danger of fracture, and that it was necessary to confine him to his bed for a period of seven days. This assault was observed by four witnesses who identified the defendant, some of whom called the police, and defendant was arrested.

Woodman was not active in the proceedings. He was young and had never before attended a union meeting. While a member, he was more of an onlooker than a participant. There is much suggestion in argument as to the merits of the controversy and the rights of the factions. With this we have nothing to do. The one assaulted (Woodman) was in a place where he had a right to be, and apparently was taking no part in any controversy and did not attempt to injure anyone. The assault was sudden and unprovoked. There was some evidence that others were struck by the defendant at about the same time. No one was severely injured except Woodman, who was confined to the house for several days.

The defendant calls attention to the fact that this court has the power and authority and, as he claims, the duty, to reduce the penalty from confinement in the penitentiary to a fine or confinement in the county jail. Section 793.18, Code of 1946. The duty, however, if and when there is such, is dependent upon the facts. Defendant recites various cases where this court has exercised that power. We have also frequently refused to reduce the sentence.

Are the facts here such as to justify a change in the penalty imposed? Defendant claims one element to be considered is the alleged weakness of testimony. We do not consider it weak.

1160

Whether or not, under the rules under which the members were working, defendant had any business in the meeting at all, it was certainly incumbent upon him to conduct himself as an orderly law-abiding citizen, and to interfere in no unlawful way with. other citizens assembled for their own lawful purposes. And it appears that the subject for which most or all of them had assembled had begun with violence, and the fact that objection had been manifested in no way justified his resort to force. He was interfering by force of arms in the right of others to peaceable assembly—was a forcible aggressor.

Cases cited by defendant in which this court has exercised leniency are not convincing under the facts here. Our most recent case, State v. Marcus, 240 Iowa 116, 34 N. W. 2d 179, a prosecution for leaving the scene of an automobile accident involved no question of intention to injure, and probably not of recklessness: Carey v. District Court, 226 Iowa 717, 285 N. W. 236, was a proceeding for contempt—not a criminal case, and entirely dissimilar facts. State v. Kendall, 200 Iowa 483, 203 N. W. 806, a conviction of driving while intoxicated, with penalty in excess of those usually inflicted at that time, and where no injury occurred; State v. Owen, 196 Iowa 285, 194 N. W. 187, larceny of fowls—no reason stated; State v. Rogers, 156 Iowa 570, 137 N. W. 819, small value of goods stolen and pressure of poverty; State v. Sullivan, 51 Iowa 142, 50 N. W. 572, manslaughter, extenuating circumstances; State v. Moody, 50 Iowa 443, breaking and entering, amount of property stolen small; State v. Doering, 48 Iowa 650, extenuating circumstances and condition of defendant's mind; State v. Thompson, 46 Iowa 699, incest, character of woman, circumstances not justifying the imposition of ten years, but reduced to five; State v. Hayden, 45 Iowa 11, a reduction on account of character, not a hardened criminal; State v. Madden, 35 Iowa 511, evidence barely sufficient to convict, attorney general consenting.

This court has, in many cases, refused to exercise the power granted by statute to interfere by reduction of sentence. The subject is fully discussed in State v. Olander, 193 Iowa 1379, 186 N. W. 53, 29 A. L. R. 306, with many cases reviewed, including those in which a reduction of penalty has been refused. Reasons

given in the Olander case for the exercise of leniency are stated, that in a proper case we will reduce the punishment if it is too severe, citing State v. Madden, supra, and State v. Little, 42 Iowa 51. And further, that this power will be exercised when the court below has manifestly visited too severe a penalty, one disproportionate to the degree of guilt, as shown by the proof. State v. Freeman, 27 Iowa 333. And that there must be some legal data upon which to base its action in reducing the sentence. State v. Baughman, 20 Iowa 497, citing many other cases.

The rules followed in the earlier cases have also been adhered to in later cases where the question has arisen. See State v. Giles, 200 Iowa 1232, 206 N. W. 133, 42 A. L. R. 1496. One of our most recent cases is State v. Albertson, 237 Iowa 1148, 1155, 24 N. W. 2d 395, 399, decided in 1946, where the same sentence, as in the present case, was given the defendant on a conviction of assault with intent to inflict great bodily injury, and where this court refused to interfere. The court in that case said: "We see no reason for interfering here. The trial court was in a position to appraise the situation and its judgment in prescribing a penitentiary sentence will be upheld." Under the facts of this present case the same may be said here.

We have not attempted to review all the argument for the defendant. We are satisfied that the crime of assault was committed without excuse or provocation, under circumstances clearly and fully justifying the jury in finding that the crime was committed with intent to injure the victim seriously, as he was so injured.

We are satisfied that the court was right in inflicting the sentence which was given, and there was no error.—Affirmed.

HAYS, C. J., and SMITH, OLIVER, BLISS, GARFIELD, MULRONEY, and WENNERSTRUM, JJ., concur.

MANTZ, J., not sitting.